**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

DIANA LACROIX,

        Plaintiff,

v.

THE TJX COMPANIES INC. d/b/a T.J. MAXX,

        Defendant.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

      Plaintiff Diana LaCroix, by her attorney Mary Jo Lowrey of Lowrey Parady, LLC, files this Complaint and Demand for Jury Trial against Defendant The TJX Companies, Inc. d/b/a T.J. MAXX ("TJX"), and complains as follows:

**<u>INTRODUCTION</u>**

      1.    Plaintiff Diana LaCroix worked for TJX from 2011 until mid-2019 as a Loss Prevention Customer Service Associate ("LPCSA"). She was an exemplary employee who was consistently praised by her supervisors and beloved by TJX's regular customers. However, in December 2017 Ms. LaCroix began to suffer severe symptoms from degenerative disc disease, spondylolisthesis, facet arthropathy and visual macular degeneration. After her supervisor Luke Sorenson became aware of Ms. LaCroix's disabilities and her need for accommodations Ms. LaCroix was harassed because of her disability, repeatedly given disciplinary write ups, denied her reasonable accommodations and eventually terminated.

1

2.     TJX discriminated against Ms. LaCroix as a person with disabilities, failed to accommodate Ms. LaCroix, retaliated against her for her requests for accommodations and use of FMLA leave, and terminated her employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*.

## PARTIES

3.     Plaintiff Diana LaCroix is a resident of and domiciled in Colorado. Her present address is 1095 Clarkson St., Apt 2, Denver, CO 80218.

4.     Defendant TJX is a Delaware corporation with a principal office street address of 770 Cochituate Road, Framingham, MA 01701. Defendant TJX is registered to do business in the State of Colorado.

5.     Defendant TJX employed Ms. LaCroix at its T.J. MAXX store located at 710 16th Street Mall, Denver, CO 80202.

## JURISDICTION AND VENUE

6.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(3) and (4), which grant original jurisdiction to the Federal District Court in actions which arise under federal civil rights laws. Specifically, this Court has jurisdiction because Ms. LaCroix alleges violations of her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).  A substantial part of the events or omissions giving rise to Ms. LaCroix's claims occurred within the jurisdiction of the United States District Court for the District of Colorado.

## ADMINISTRATIVE EXHAUSTION

8.      Ms. LaCroix has complied with all administrative, jurisdictional and legal prerequisites to the filing of this action.

9.      Ms. LaCroix timely filed Charge No. 541-2019-00817 with the Equal Employment Opportunity Commission ("EEOC") on January 2, 2019 alleging disability discrimination and retaliation.  Ms. LaCroix amended her charge on August 6, 2019 to include her termination.

10.     The EEOC issued its Notice of Right to Sue on September 30, 2019.

11.     Ms. LaCroix has exhausted all administrative remedies and timely files this action.

## GENERAL ALLEGATIONS

12.     Ms. LaCroix was hired by TJX on November 17, 2011 as a part-time Retail Associate.

13.     Ms. LaCroix was promoted to a full-time Loss Prevention Customer Service Associate in January 2012.

14.     TJX had more than 50 employees at all relevant times to this action.

15.     Ms. LaCroix suffers from degenerative disc disease, spondylolisthesis, facet arthropathy and visual macular degeneration.

3

16.     Ms. LaCroix's disabilities substantially limit many of her major life activities, including but not limited to seeing, walking, standing for long periods of time, lifting and reaching and constitute disabilities under the ADA.

17.     Ms. LaCroix began experiencing extreme back pain and weakness in her legs in December 2017.

18.     Ms. LaCroix informed her supervisor, Mr. Luke Sorenson, of her disability in December 2017, when she first began experiencing symptoms.

19.     Despite knowing that Ms. LaCroix was having trouble walking without assistance, Mr. Sorenson did not offer Ms. LaCroix information regarding FMLA leave or accommodations.

20.     Ms. LaCroix's condition continued to worsen; however, TJX failed to engage Ms. LaCroix in an interactive dialogue regarding her disability and need for accommodation.

21.     Ms. LaCroix requested that TJX make reasonable accommodations to allow her to successfully perform the essential functions of her position.

22.     Ms. LaCroix requested that she be allowed to use sick time in order to go to doctor's appointments.

23.     On January 9, 2018, Ms. LaCroix received a Formal Corrective Action ("First Corrective Action") for absenteeism.

24.     Prior to disclosing her disability and receiving the First Corrective Action, Ms. LaCroix had never received any discipline during her more than six years of employment at TJX.

25.     The First Corrective Action stated Ms. LaCroix had been absent 8 times in the last 12 months.

26.     All of the absences documented on the First Corrective Action were for doctor appointments or illness and Ms. LaCroix used accrued sick time for such absences.

27.     In her six years of employment at TJX Ms. LaCroix had never before been written up for using her accrued sick time.

28.     Out of the eight absences identified on the First Corrective Action, seven of the absences took place between December 2017 and January 8, 2018 when Ms. LaCroix was experiencing extreme symptoms due to her disability and was in the process of having her disability diagnosed.

29.     Mr. Sorenson was aware of the reason for Ms. LaCroix's absences and did not discuss FMLA leave or reasonable accommodations with her.

30.     Mr. Sorenson told Ms. LaCroix that sick days were considered absences.

31.     Ms. LaCroix used sick days for illness or doctor's appointments in all of her prior years of employment; however, she was not disciplined for absenteeism until after she disclosed her disability, requested accommodations and began using sick time for appointments related to her disability.

32.     On January 17, 2018, Ms. LaCroix provided Mr. Sorenson with a doctor's note stating that she needed a reasonable accommodation of being allowed to sit for five to ten minutes each hour during her shift.

33.     The purpose of the requested accommodation was to allow Ms. LaCroix to get off of her feet and rest her back and legs.

34.     Mr. Sorenson informed Ms. LaCroix that she could take the needed rest breaks; however, the breaks would need to take place in the break room, which was over 80 feet away from Ms. LaCroix's work area.

35.     Ms. LaCroix requested that she be allowed to sit in an empty dressing room, the manager's office or a bench at the front of the store in order to reduce the amount of walking needed to get to and from the break room.

36.     Allowing Ms. LaCroix to sit in an empty dressing room, the manager's office or a bench at the front of the store during her breaks was a reasonable accommodation which was not unduly burdensome on TJX.

37.     Mr. Sorenson denied Ms. LaCroix's request to take her rest breaks in an empty dressing room, the manager's office or a bench at the front of the store.

38.     Upon information and belief, other non-disabled employees regularly used empty dressing rooms to sit down and take a break.

39.     Upon information and belief, other non-disabled employees were allowed to sit in the manager's office.

40.     Prior to informing TJX of her disability, Ms. LaCroix had a key to the manager's office and was allowed to use it.

41.     After Ms. LaCroix requested accommodations, she was no longer permitted to use the manager's office.

42.     Mr. Sorenson's insistence that Ms. LaCroix only rest in the breakroom was harassment based on Ms. LaCroix's disability.

43.     Because Mr. Sorenson required her to walk to the breakroom in order to rest, Ms. LaCroix rarely used the rest break accommodation she was granted.

44.     Even though Ms. LaCroix submitted her request for accommodation of sitting for five to ten minutes each hour during her shift on January 17, 2018, it was not approved until approximately six months later in June 2018.

45.     On March 9, 2018, Mr. Sorenson gave Ms. LaCroix another Formal Corrective Action ("Second Corrective Action") for alleged "poor performance."

46.     The Second Corrective Action states, in part: "Diana is not working her scheduled shifts."

47.     Mr. Sorenson and TJX were aware that Ms. LaCroix needed time off for doctor's appointments.

48.     Mr. Sorenson and TJX should have considered Ms. LaCroix's request for time off for doctor's appointments a request for reasonable accommodations.

49.     Mr. Sorenson and TJX should have informed Ms. LaCroix of FMLA.

50.     Instead of granting Ms. LaCroix the reasonable accommodation of intermittent leave for doctor's appointments, Ms. LaCroix was disciplined for not working her scheduled shifts.

51.     The Second Corrective Action was discriminatory against Ms. LaCroix because of her disability and constituted workplace harassment.

52.     The Second Corrective Action was retaliation against Ms. LaCroix for her need for the reasonable accommodation of taking time off for doctor's appointments related to her disability.

53.     On May 21, 2018, Mr. Sorenson gave Ms. LaCroix a Written Warning Action ("Third Corrective Action").

54.     The Third Corrective Action states that it was for alleged "inappropriate behavior."

55.     In the Third Corrective Action, Mr. Sorenson disciplined Ms. LaCroix for complying with job protocol when dealing with a potential shoplifter in the store.

56.     For the prior six years of her employment, Ms. LaCroix followed the same protocol and was never disciplined.

57.     The first time Ms. LaCroix was disciplined for the protocol she followed when interacting with a potential shoplifter was after TJX learned she was disabled.

58.     Mr. Sorenson gave Ms. LaCroix the Third Corrective Action to harass her because of her disability.

59.     Mr. Sorenson gave Ms. LaCroix the Third Corrective Action in an attempt to push her out of her position in retaliation for taking time off for doctor's appointments and her request for reasonable accommodation.

60.     Mr. Sorenson's treatment of Ms. LaCroix created a hostile work environment.

61.     On June 8, 2018, Ms. LaCroix received paperwork that her FMLA had been approved.

62.     On June 8, 2018, TJX approved Ms. LaCroix's request for accommodations of five to ten minute breaks every hour, intermittent leave for doctor's appointments and no bending, lifting and twisting over ten pounds.

63.     TJX approved Ms. LaCroix's request for accommodation six months after she first discussed her need for accommodations with Mr. Sorenson.

64.     On June 8, 2018 Ms. LaCroix received her performance review ("2018 Review").

65.     The comments in Ms. LaCroix's 2018 Review constitute disability discrimination, harassment and retaliation.

66.     In the 2018 Review, Mr. Sorenson states "You have a formal corrective action based on Absences and IF you continue to work 6 days weekly you need to based balanced shifts [sic]. DO NOT short your Sun/Sat's."

67.     In the 2018 Review, Mr. Sorenson states "I have been concerned this last year with several things regarding your performance and absences.  I need you to 'Be Here' when it comes to being at work both mentally and as scheduled."

68.     The comments made by Mr. Sorenson in Ms. LaCroix's 2018 review directly relate to Ms. LaCroix's disability and use of intermittent leave and request for accommodation due to her disabilities.

69.     Mr. Sorenson's comments demonstrate his animus toward Ms. LaCroix as an individual with a disability.

70.     On October 18, 2018, Ms. LaCroix made another formal request for accommodation to work less than eight hours per shift as suggested by her doctor.

71.     On December 3, 2018, Mr. Sorenson asked Ms. LaCroix to complete a project ("Project") which required her to bend down and work on the lower shelves of a display, in violation of her approved accommodations.

72.     Assigning Ms. LaCroix this task was harassment based on her disability.

73.     Ms. LaCroix worked on the Project because she feared retaliation if she mentioned her restrictions related to her disabilities.

74.     Ms. LaCroix told Mr. Sorenson she was in severe pain due to her work on the Project.

75.     Ms. LaCroix continued to work on the Project and had to leave her shift early due to extreme pain.

76.     On December 14, 2018, Ms. LaCroix received another Written Warning Action ("Fourth Corrective Action").

77.     The reason for the Fourth Corrective Action was alleged "poor performance."

78.     The Fourth Corrective Action states that one of the reasons Ms. LaCroix was being disciplined was because she "spent 10+ minutes in the lounge…"

79.     The Fourth Corrective Action was retaliation for Ms. LaCroix using her accommodation of rest breaks during her shift.

80.     The Fourth Corrective Action was harassment based on Ms. LaCroix's disability and need for accommodations.

81.     On January 17, 2019, Ms. LaCroix informed Mr. Sorenson that she would be requesting new accommodation recommendations based on a new diagnosis and disabilities related to her vision (visual macular degeneration).

82.     Ms. LaCroix submitted a Reasonable Accommodation Medical Inquiry Form on or about March 7, 2019 stating that Ms. LaCroix's visual macular degeneration limits her ability to work at night.

83.     On June 3, 2019, Ms. LaCroix was terminated from her position after a corrective action for alleged negligence and continued poor performance.

84.     Ms. LaCroix's termination states that "Because this is the third Written Warning you have received in a one-year period, you are being terminated…."

### FIRST CLAIM FOR RELIEF
**Failure to Accommodate in Violation of the Americans with Disabilities Act
49 U.S.C. § 12101, *et seq.***

85.     Ms. LaCroix incorporates all foregoing and subsequent paragraphs of this Complaint as if fully set forth herein.

86.     As a person with degenerative disc disease, spondylolisthesis, facet arthropathy, and visual macular degeneration, Ms. LaCroix has a disability under the ADA.

87.     Defendant TJX was Ms. LaCroix's employer.

88.     Ms. LaCroix was a qualified person with a disability who was able to perform all of the essential functions of her job with reasonable accommodations.

89.     TJX could accommodate Ms. LaCroix without undue hardship.

90.     Ms. LaCroix required a reasonable accommodation of intermittent leave, sitting for five to ten minute breaks during her shift and no bending, twisting and lifting over ten pounds.

91.     Defendant failed to make reasonable accommodations to Ms. LaCroix for her disability.

92.     As a direct and proximate cause of Defendant's actions, Ms. LaCroix suffered and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity, loss of accumulated benefits, emotional distress

and other compensatory damages in amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney fees and costs.

## SECOND CLAIM FOR RELIEF
### Disability Discrimination in Violation of the Americans with Disabilities Act
### 49 U.S.C. § 12101, *et seq.*

93.     Ms. LaCroix incorporates all foregoing and subsequent paragraphs of this Complaint as if fully set forth herein.

94.     At the time of her termination, Ms. LaCroix was a qualified individual with multiple disabilities including degenerative disc disease, spondylolisthesis, facet arthropathy and visual muscular degeneration.

95.     Ms. LaCroix was able to do her job with accommodations of intermittent leave, sitting for five to ten minute breaks during her shift and no bending, twisting and lifting over ten pounds.

96.     Defendant was Ms. LaCroix's employer within the meaning of the ADA.

97.     Defendant created a hostile work environment and discriminated against Ms. LaCroix by giving her multiple Corrective Actions.

98.     Defendant created a hostile work environment and discriminated against Ms. LaCroix by requiring her to do tasks which were dangerous to her health and in violation of her granted accommodations.

99.      Defendant illegally terminated Ms. LaCroix because of her disability.

100.     Creation of a hostile work environment, discrimination in terms and conditions of employment, and termination are adverse employment actions.

101.    Defendant's actions described herein were willful, wanton, intentional and taken in reckless disregard for Ms. LaCroix's protected rights and feelings.

102.    Defendant failed to take reasonable care to prevent and correct the unlawful discriminatory practice described herein.

103.    As a direct and proximate cause of Defendant's actions, Ms. LaCroix suffered and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; emotional distress; and other compensatory damage in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorneys fees and costs.

### THIRD CLAIM FOR RELIEF
### Retaliation in Violation of the Americans with Disabilities Act
### 49 U.S.C. § 12101, *et seq.*

104.    Ms. LaCroix incorporates all foregoing and subsequent paragraphs of this Complaint as if fully set forth herein.

105.    Ms. LaCroix engaged in protected activity under the ADA on multiple occasions by seeking reasonable accommodations for her disabilities.

106.    As a result of Ms. LaCroix's request for reasonable accommodations, TJX began a pattern of retaliatory harassing and discriminatory conduct toward Ms. LaCroix.

107.    Defendant retaliated against Ms. LaCroix by giving her multiple Corrective Actions.

108.    Defendant retaliated against Ms. LaCroix by requiring her to do tasks which were dangerous to her health and in violation of her granted accommodations.

109.    Defendant retaliated against Ms. LaCroix by terminating her employment.

110.    As a direct and proximate cause of TJX's retaliatory actions and conduct, Ms. LaCroix suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity, loss of accumulated benefits, emotional distress and other compensatory damages in amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney fees and costs.

## FOURTH CLAIM FOR RELIEF
### Interference and Retaliation in Violation of the FMLA
### 29 U.S.C. § 2601, *et seq.*

111.    Ms. LaCroix incorporates all foregoing and subsequent paragraphs of this Complaint as if fully set forth herein.

112.    At the time of her termination, Ms. LaCroix was taking approved intermittent FMLA leave for her serious medical condition.

113.    Defendant was Ms. LaCroix's employer for the purposes of the FMLA.

114.    Defendant illegally terminated Ms. LaCroix in retaliation for taking medical leave protected by the FMLA and in order to interfere with her efforts to take medical leave protected by the FMLA.

115.    Defendant's actions described herein were willful, wanton, intentional, and taken in reckless disregard for Ms. LaCroix's protected rights.

116.    As a direct and proximate cause of Defendant's actions and conduct, Ms. LaCroix suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; emotional distress; and other compensatory damage in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorneys fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, the Ms. LaCroix respectfully prays that this Court grant the following relief:

A.  Injunctive and declaratory relief,

B.  Actual economic damages in such amount as shall be proven at trial for back-pay, lost benefits, wages, promotions, tenure, seniority, and other employment opportunities; reinstatement or front pay in lieu of reinstatement,

C.  Compensatory damages including, but not limited to, emotional distress, suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses,

D.  Pre-judgment and post-judgment interest,

E.  Attorney's fees, costs and expenses, and

F.  Any other relief justice requires and law or equity allows.

## JURY TRIAL DEMAND

The Ms. LaCroix hereby requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 23rd day of December, 2019.

**LOWREY PARADY, LLC**

*/s/  Mary Jo Lowrey*
Mary Jo Lowrey
1725 High Street, Suite 1
Denver, CO 80218
Phone: 303-593-2595
Fax: 303-502-9119
Email: maryjo@lowrey-parady.com
*Attorney for Ms. LaCroix*

Ms. LaCroix's Address:
1095 Clarkson St., Apt. 2, Denver, CO 80218